All right. Our second case for this morning is Inbray Jacqueline Sterling in the matter of Sterling against Southlake Nautilus Health. Mr. Schellest. May it please the court, I'm Sam Schellest here for Jackie Sterling. As you know, in the underlying case, Ms. Sterling was arrested on a Friday night and got out of jail on Monday. She was arrested on a writ of attachment that was issued after both the discharge and the  Southlake, the creditor, had an established procedure of taking the bankruptcy notice, sticking it in an envelope, and mailing it to their lawyer. What's important about that is my learned friend for Southlake, in their own brief, says there was no deviation in this case. They insist that there was no deviation. The reason that's important is the court below said that the creditor did not, quote, pass on the notice to the Austrian firm. This is a clearly erroneous finding. There is not one shred of evidence before the court that indicates that's true. In fact, the creditor testified through Schreback, their principal, that he kept to the same brief. He didn't send it out to the same lawyer that he had for almost a decade. Don't you have a problem, though, with the district court's findings of fact? The district court is satisfied because of the mailing presumptions that Southlake itself gets the notice, but the district court thinks that the best you can say is that sometimes Southlake passed that along to the firm. I would respectfully say that the briefs on the other side admit it was an established procedure. In fact, it's a very strong piece of evidence. He testified he always sends it. He never testified to any deviation, and indeed, the lawyer testified from the Austrian firm that they got the things, the bankruptcy notices, by mail. I'm looking at page 12 of the opinion, and it says Southlake had a practice at times of forwarding bankruptcy case notices to the Austrian firm, and then he says there's no evidence that this practice was followed with respect to the notices received concerning Sterling's bankruptcy. I would argue that that is clearly erroneous. That is not the testimony that was given. There is not one sentence, not one, in the entire testimony of this trial that lasted several days, where anybody said that. Would that, let's say that's true, would that ultimately matter for you in light of the Austrian firm had no record of receipt, and essentially that there's no evidence that anybody there knew, and therefore, they could not have acted willfully? I would say no, and here's why. We are not required to make Mr. Austrian admit getting the receipt. We can never prove that. If that were the standard, we would have to force a respondent to say, I admit I got it. But in order to show records help, though? Well, but he testified that he didn't see the notice in the file, which he then lost. But that would be a different case. If there were a paper trail, a record keeping trail, that particular notices were sent out, then that statement might carry different weight. But my argument here, Your Honor, is that that would use what the creditor and the lawyer, their sloppy record keeping against us, who got arrested in violation of the stay. And was the file lost, or just the file jacket? My understanding is the file jacket was lost. However, the thing that he looked in was the file jacket, which was the... I thought you got the file itself during discovery. Well, there were some arguments about that. There were no emails for seven years. They were missing. And let me talk about the Excel sheet that was also missing, because I think it was a lot of the trial, to answer your question about record keeping. The law firm allegedly prepared an Excel spreadsheet that contained all sorts of records and gave the creditor a monthly update like collection lawyers do. We only got one for seven years. And the one we got, amazingly enough, was after Jackie was arrested, released, and they knew all about this. They can't... At that point, they can't say they didn't know. It didn't contain any notes that she had been arrested, incarcerated, released, or that the file was closed because of bankruptcy. So to use their lack of record keeping against the person who was arrested in violation of the stay is particularly, I think, unfair. I want to go back to the statement you made a moment ago, that you don't have to show that they knew about the discharge order in order for the court ultimately to find willfulness. I agree with that. Of course, we have to show they knew. What I meant or what I thought I said was we don't have to have them admit they knew. Right. But the court would still have to make a finding, and you would still have to establish by clear and convincing evidence that they knew about the discharge in order to find that they did something willfully. Yes. You agree with that? I agree with that, and the fact... So how do you prove here? What's the evidence that supports, by a clear and convincing finding, that the defendants knew about the discharge order? As to defendant Southlake, the clear and convincing evidence is the bankruptcy court mailed it to the correct address, the correct zip code... And the court found that. Okay. As to the law firm, the regular and established business record and procedures of Southlake, which Austgen knew about, should be sufficient to be clear and convincing evidence. In addition... So just that... I'm sorry. Okay. Tell me the in addition. The in addition is their lack of record keeping. Their deplorable lack of record keeping should be used against them, not against Jackie Sterling. They kept no bankruptcy log. They kept no record of mail. They kept no record of emails. The file was lost. These are all pieces that add, in my view, in favor of the fact that we proved they received it. Well, again, the file wasn't lost. At least it doesn't appear to it. Okay. The jacket. But the jacket is key because the clerk, Pam Ross testified, she noted bankruptcy notices on the jacket. She noted when she checked for bankruptcy on the jacket. And of course, the jacket is gone. But again... She's the one who said she checked twice and there was no record of bankruptcy. Once when Ms. Sterling said she was planning on filing in May of 2008. Correct. And then at a later time. But she also testified, and I think it's key to answer your question. I asked her, does the fact that you don't have the notice in the jacket, that you didn't see it, mean you didn't get it? She said, of course not. She said no. She's the one who runs the office. So she said that was not true. The bankruptcy court's presumption or statement that the lawyer said they didn't get it is simply not evidence that it wasn't sent or received. Is that a credibility determination though by the bankruptcy court that he credited what the lawyer said that he did not receive it? Even if you credit that he's telling the truth. He didn't say he didn't receive it. I want to emphasize that. He never said that. He very carefully and cautiously said, I didn't see it in the file. If you credit that as true, my answer to that respectfully is, so what? Didn't he deny during his testimony though that he was aware of the discharge order? He said, I deny I'm aware of it because I didn't see it in the file. He didn't say they didn't receive it. And the testimony, I'm sorry. No, go ahead. Again, I think the problem with that is we have no other way of proving surface mail that younger people would look at and say, are you kidding me? But at the time, this was how things worked. We have no other way except presumptions to prove surface mail notice on the creditor or on the law firm. There is no other system unless the respondent's going to admit receipt. And I think the other thing to emphasize is the bankruptcy judge said, it's hard for me to believe that a lawyer would do this if he got the notice. And this, to me, is exceptionally unfair and wrong. And the reason is there are hundreds of cases of people violating the automatic stay, unfortunately, and violating the discharge order. If we are to say that it is never logical to violate the stay, you're never going to get an advantage out of it. And Mr. Calamaros, during the trial, said, why would a firm do this? In the end, it wouldn't work. But that turns logic upside down. People violate court orders all the time, unfortunately. And if we are to presume that the lawyer is entitled to some sort of special honor because he's an attorney, I think that's unfair. The fact is the order was violated. And there are two ways that we've proved it. One is through the established procedure. And the second is the direct mail to the creditor. And I think established procedure, which my learned friend himself says there was never a deviation from in the brief, is strong evidence. Because 10 years of business records, 10 years of continual practice, seems to me a very strong record. The other argument I would also emphasize is that Your Honor asked me about the words passing on, or I brought it up. The regular procedure was used to abdicate responsibility for Southlake, to let them out of it, but then used to not indict the law firm. I don't see how we can have it both ways. Why would? Can I just maybe take you in a slightly different direction? The bankruptcy judge expresses, I think, some frustration that nobody seems to have complied with the local bankruptcy rule B4002-1A2. And your argument seems to be, oh, nobody pays any attention to that anyway. But I'm not happy with that argument. You know, it seems like this situation is exactly what that rule is designed to avert. My argument is not that we shouldn't pay attention to it. My argument is, we interviewed the chief clerk of Lake County. She testified that if there is a bankruptcy notice that goes to the clerk's office in Lake County, Indiana, it's thrown in the garbage. They have no procedure to assess these notices and put them with a file. Because they get the notice with a bankruptcy number, and they can't correlate that. So it would have been a worthless act. But I want to emphasize, the reason for that is because, and I understand Your Honor's frustration that people should follow the rules. But it is not the prima facie cause of what happened here. In addition, Judge Moss, who was the- But it may have prevented it. Well, I don't- If they had filed it, or there was some way to check, it may have prevented it. Except the testimony was that Judge Moss was the state court judge. She did not. In fact, she had a particular procedure of not pulling the court files. But what about this part of what the bankruptcy is? Judge Klingenberger, he says, however, the filing of the notice with the court in strict adherence to Rule B4002-1A2 would have involved giving notice of the filing of the bankruptcy case to the Austgen firm. And the court is hard-pressed to believe, and so on, that they wouldn't have done something. So it's not just, would the court have thrown it in the wastebasket or not? But if the firm had received such a notice, are we going to assume that they throw them in the wastebasket too? No. But the source of the notice is not a cure here, when you have notice from their own client in a regular procedure, and they still didn't stop it. You're asking for the inference that the bankruptcy court wasn't willing to draw, that here's this regular practice. We're going to draw an inference that it was complied with this time. They had actual notice. The right people did it the right time. I'm not saying you couldn't draw that inference. The bankruptcy judge didn't. But one more piece of evidence, such as compliance with the bankruptcy rule, would be more evidence on the side that they really did get notice of it, in which case you'd feel pretty comfortable saying you violated the injunction. Had those things happened, I would agree. But of course, they didn't happen. And the proximate cause of what did happen is that the creditor, represented by their agent, made a willful choice. Willfulness is, of course, not the intent to violate the statute, but an intent to act. They issued the rule, and they issued the writ. And let me just bring up one last point. You're almost out of your rebuttal time. I understand. I will wait for my rebuttal then. Thank you very much. Fine. All right, Mr. Austgen. Good morning, Your Honors. Terry Austgen for South Lake Nautilus. Just may it please the court to bring something to your attention. My name, I have the same last name as David Austgen, who was a defendant. We're not related. It's total coincidence. But I just want to point that out. And I want to focus on some of the questioning with respect to the local rule. I didn't see a huge difference in any of the briefs regarding the standards of review, the standards of evidence, the clear and convincing issues, the clearly erroneous review standard, the de novo review of the legal issue. I think the briefs pretty much agree on that. So could I ask you, though, I mean, it seems based on the bankruptcy judge's findings that your client, South Lake, did have actual knowledge of this bankruptcy. The judge goes through a careful analysis of the mailing rules and the presumptions. And you, at that point, incur obligations with respect to the person who is bankrupt. You have to live with the actions of whatever legal agent you chose. We enforce that rule all the time, not only in civil cases, but even in criminal cases, where somebody's spending extra time in prison. So even if the law firm didn't do what it should have done, why aren't you on the hook for violating the injunction? Well, we're here on a contempt issue. That's what I mean. You violated the injunction, so you're in contempt. The bankruptcy court judge found that South Lake received, because of the mailbox rule, notice of the bankruptcy. Right, right. But the bankruptcy judge never concluded that South Lake had actual knowledge of the discharge. Well, I'm going to quarrel with that a little bit in that, A, we're here to decide whether the bankruptcy judge was right or not. And since you had knowledge of the bankruptcy, that imposes a lot of immediate duties. You've got to cease collection efforts. You can't maintain collection efforts. You knew that you had engaged the services of a law firm to collect this fitness club debt, whatever it was. And you didn't take those affirmative steps to shut it down. Well, the evidence at the trial was, and the bankruptcy court found, that the normal practice of South Lake was to forward to the law firm any notices that it got from the bankruptcy court with respect to Ms. Sterling or anybody else. And the evidence was that they had no specific knowledge of the Sterling bankruptcy, but as far as they knew, they always followed the procedure. Well, that's where we have this conflict in the bankruptcy judge's finding. He says, in the part that I noted earlier, that only sometimes did this happen. At times is his phrase. Number five, South Lake had a practice at times of forwarding bankruptcy case notice to the Austin firm with respect to collection cases, but then he says there is no evidence that this practice was followed with respect to the notices received concerning Sterling's bankruptcy. Are you talking about Judge Van Backen's opinion? I'm talking about Judge Klingenberger's opinion. Well, I think, you know, looking at the- I mean, that's not the greatest evidence for you, you know, because if you could have shown that you were notifying your firm, your law firm, religiously and getting that done and trusting to them to do the right thing, there still would be another issue in the case, but it would be somewhat different from the one we have. And the bankruptcy judge also specifically found, which you said he did not, that South Lake received notice of the initial filing and of the entry of her discharge. The court also determines that South Lake's receipt of the notices imparted knowledge to South Lake of the filing of the case and of the applicability of the automatic stay and of the entry of the discharge. You said the court didn't find that. The court specifically made that finding as to your client. Maybe I misspoke myself. I want to distinguish between the notice that the bankruptcy court judge found that South Lake had and the notice that's required to hold them in contempt. We're here on contempt. There's no issue. In our brief, we said we're not raising the issue of whether they received notice of the bankruptcy petition and notice of the discharge. But what do you think the standard for contempt is? I would think if the firm knew about the discharge and they go ahead in violation of the discharge and continue to try to collect on this debt, that's a willful violation. Seems to me courts hold people in contempt for that sort of thing. But with respect to South Lake, South Lake didn't do anything. That was the specific finding of Judge Klingelberger. So it's the second prong of the contempt that you're addressing, the willfulness, not the initial knowledge. Yes, exactly. And the question earlier is the court found knowledge of the discharge. Why shouldn't there be some obligation on you to make sure that the law firm knows? Why shouldn't you be held responsible for the law firm acting on your behalf, violating that order? Well, South Lake shouldn't be held liable if the law firm violates the order. I don't understand that at all. South Lake is in the same position as its agent. Again, we send people off to prison for 20 years for this sort of thing. So the page where I would wonder about the bankruptcy court's legal analysis is page 17 of his opinion, where after he said the things Judge St. Eve points out, he says, in order to succeed, Sterling must have established by clear and convincing evidence that South Lake undertook some action which violated the post-discharge injunction. He seems to be calling for an affirmative action. And here what we have is South Lake knowing about the discharge, but in no way ensuring that they call off the dogs, basically, that the law firm stops. Well, anything the law firm does, there's still no intentional conduct on the part of South Lake. So why isn't it that no one would ever be in contempt? Because you would just have a see no evil, hear no evil, speak no evil approach. The law firm could keep collecting, and you'd be all fine. And Your Honor, that's exactly why the local rule exists. And it doesn't just... But you agree with me that no one will ever be liable for contempt, as long as they make sure they don't know what their law firm is doing? I don't. I don't. Because I don't think this is a scope of master-servant relationship, where the principal is held responsible for something that the law firm does. There's no way in the world South Lake over a $518... They had 1,700 collections. They were not novices to the collection business. But they didn't supervise it. They had a very competent, well-respected law firm. Does Ms. Sterling have any recourse here? She does. What's her recourse? Her bankruptcy lawyers. They dropped the ball in this case. They didn't put notice to the Lake Superior Court. What about the testimony that was uncontroverted at trial that Judge Moss didn't pull the court files? That's not the exact testimony, but that only gets halfway to the issue. Indiana Trial Rule 5 absolutely requires the bankruptcy counsel to serve notice on all counsel of record in the collection cases. So the bankruptcy court rule required notice to the court and to the parties. That's the specific language of the rule. And the state court rule, Rule 5, which is even more specific than the federal rules, requires service on all counsel in the state court case and a written certificate of service on the pleading. Unquestionably, the law firm would have received it. Her bankruptcy counsel dropped the ball. And that's where the recourse should be. This isn't a contempt issue against the law firm or the creditor. It's incompetence on the part of the bankruptcy attorney. Is it undisputed that the firm was listed as counsel of record in the bankruptcy? No. The firm was not listed on the bankruptcy. Then how would the local rule impose an obligation to serve the Austin firm if they weren't counsel of record? The Austin firm was counsel of record in the state court collection case. And the bankruptcy rule requires notice to the state court and to the parties. So that notice to the state court under Indiana Trial Rule 5 would have required service on all of the attorneys of record, which would have been service on the Austin firm. All they had to do was comply with the rule. And that's the purpose of the rule. Okay. You're over your time, so I think we'll have to stop here. Thank you. Mr. Calamaros. Well, everybody's done a great job of hitting on a lot of the important things, so I hope that I can add some valuable points. Is there any obligation on you to inform your client of what you're doing in its cases? Is there any obligation? So you're going and filing a collection action and getting a warrant for the debtor's arrest. Is there any obligation on you to clear that with your client, let your client know what you're doing? The relationship between the client and the lawyer in this case really is not, Your Honor, with due respect, an issue with regard to pollution. Well, you should answer the judge's question, because she might think it is an issue. So I would advise you to answer. Yes, Your Honor. Thank you. I'm sorry. When the lawyers undertake to prosecute this collection, the scope of that relationship becomes defined. There is no ethical violation in pursuing the collection case. There was some evidence in trial, and I'm sorry I don't have that in my head about the record, that the process goes forward. The lawyers prosecuting the case until directed to stop the prosecution of the case, in my view, are entitled to prosecute the case. Is there any obligation to keep your client informed, or was that the firm's practice, to send email updates, memo updates of what's going on in the cases? There was some testimony about the process and the periodic updating of the individuals. Case by case by case, I don't think there's anything in the record that says that, per each case, a note was delivered every time something happened. So if there's periodic updating during this multiple-year period, why isn't that something you were required to, or should have, informed your client of, that you go out and get an arrest warrant in a civil case for a debt, or who has a debt of under $1,000? Well, Your Honor, two things. One, in the process of the collection case, as a practical matter, collections cases, in volume of collection cases, there are certain impractical things. To contact your client every time. A lawyer's time and advice is their stock and trade. Our commodity, we are the machine. So as an attorney works, every time that attorney touches the file to do an additional thing is an additional expense, either to the client or as a part of allocated overhead. So the business of collection is, do these things, do these things in a group, and do these things essentially ritualistically. So when a client who has over 1,000 collection matters, that client, unless they specifically direct us to contact them every time we take action, if we're charging them by the hour, candidly, Judge, the sheer cost of the collection overshadows the collection itself. What's critical in this case, and I think that the Court has touched on it, is that the standard for reversal here is a matter of clear error. Does Judge Klingenberger's decision fit within the entirety of the record? Just because there is an alternate argument to be made, and Mr. Schillis does a great job of alternate arguments, that doesn't give this Court, that's not the question of the Court here. So can I ask though, I mean, are the records in your law firm as bad as this case seems to indicate they are? You just don't keep track of anything? Your Honor, with respect, I don't think that was the testimony at trial. That's Mr. Schillis' argument. Well, we have this lost file jacket. We don't have any record of receipt. It's very easy with electronic systems to just throw in a reference, you know, notice of bankruptcy received. If you're a collection firm and you're not keeping track of which of the cases move over into the bankruptcy process, you're at risk of a lot of things. You're at risk of violating the automatic stay. You're at risk of violating an ultimate discharge. It seems like an extraordinarily bad practice. Well, Your Honor, to call upon the electronics, electronics are changing every day. I know that. We deal with them too. But the fact is, if you're in the collection business and you keep trying to collect a debt from somebody who's filed for bankruptcy, you are almost certainly violating, to begin with, the automatic stay. So your firm must have some system in place to avoid that outcome. Well, fundamentally, Judge, we expect people to follow the rules. So you pay no attention to whether a bankruptcy has been filed or not. Is that right? Your Honor, that's not true. How do you do it then? How do you do it? Well, when we receive notice of a bankruptcy, then we take action. And notice of a bankruptcy comes from a bunch of different ways. And how does that action get taken? I mean, and is it reflected in any paper records of your firm or electronic records or the like? The testimony was that when a bankruptcy is receded, then it is noted. And then bankruptcy collection. Noted where? Well, in one point, it was noted on the file jacket. That's one place. In another part of testimony, there was notation that it's done by way of a spreadsheet. And then the other thing is it's noted in the paper file itself as an example. Was the paper file produced here? Yes, Your Honor. The record's a little bit unclear. Yes. But the file jacket was lost. The file jacket was lost. And some of the Excel spreadsheets did not exist. According to counsel, these discoveries... No, I'm talking about in the record. Your sheets, you would know if they were produced or not. It seemed to me from reading the record, not counsel, but from reading the evidence in the record that some of the Excel spreadsheets did not exist anymore or were not produced. We did not produce anything, Your Honor. There were no discovery disputes put before this court. We did not... We were not called on the court... So did some of the Excel spreadsheets not exist anymore? There was no particular... It wasn't entirely clear whether those specific spreadsheets that Mr. Schillis thought should exist existed at all. We gave Mr. Schillis all of our file. None of these issues in discovery were run at the trial court level. None of these issues were part of the finding of fact. To bring issues up about discovery now is the cart left and the horse down the street. I want to go back to the firm's responsibility for a minute. What impact, and I think this evidence was not controverted at trial, what impact should it have that Ms. Sterling contacted the firm and told them she was going to file for bankruptcy? She... Absolutely. That was what I was about to say in terms of notation. What impact should that have on what you do and on this court's ruling? Well, one, a suggestion of bankruptcy by a person without a filing of bankruptcy? That's like somebody saying, I'm going to sue you. Whether they sue you or not, until it happens, it doesn't. But should that put an obligation on you to check via PACER? It's so easy to query somebody's name. We did. We checked twice. I'm sorry to interrupt you. The answer is I do not believe that the law of the land right now is you have to check PACER. The only case I've ever found that's actually talked about it was a case out in North Dakota. Should it put some obligation on you before asking for an arrest warrant for somebody when you've been told by that person she's going to file for bankruptcy to check and make sure? Well, Your Honor, we did, twice. There was a year and a half between the time that the plaintiff, Ms. Sterling, suggested she might file bankruptcy and when she actually filed bankruptcy. We checked twice. But you didn't check before you asked for the arrest warrant. You checked much earlier. Right. And if a person says they're going to file bankruptcy and it's not a threat, maybe they file bankruptcy. How many times more? Because bankruptcy is a privilege. And candidly, a person who's seeking the protection of bankruptcy court has certain obligations, like notice. And if you say, Judge, in your ruling that, well, we think they should always check the PACER. Now what we've done is relieved somebody of a statutory obligation. In this case, we have a local rule. In this case, we weren't on the matrix. In terms of things that, I mean, I defend lawyers in terms of the things I'm concerned about with a bankruptcy lawyer. She was aware there was this debt, but she didn't do a search of her own to see if there was a lawsuit having been filed. With knowledge of the debt of Southlake, she could have gone under the Lake County docket, the bankruptcy attorney. But she disclosed the Southlake debt. She schedules it. In common practice on bankruptcy, identifying the lawyers for the creditors. And some of these people are unsophisticated. I mean, I don't know. That sounds like a hybrid. Anyway, you need to wrap up because your time has expired. I'm sorry. The fundamental thing, clearly erroneous, is are there alternates to this? Yes, there are. Is this that? No. Thank you very much. Thank you. Mr. Schellest. I'll give you three minutes, Mr. Schellest, because the others ran over. Very briefly, Inree Kuzanuski, 508-BR-678. I think it answers the court's question. When a writ of execution is issued after the notice of stay and discharge, they have an obligation to take affirmative steps to undo the acts of execution. Number two, this was not a dormant case. A writ had been issued, and it was issued after. They did nothing to check that out. Number three, in terms of checking the file in answer to your question, they say they don't know when they checked, because, of course, the file jacket is missing, and they weren't able to answer that question. Number four, in terms of discovery, we, in fact, did ask, and there's trial notes of this, for all their records to show their procedures of safekeeping. The trial judge ruled against me and said, you aren't entitled to see those other files. So there is no record of care by these people. In addition, Pam Russ, the clerk, said when my client was arrested and in jail, I asked her, did you go to court to get her out? Did you go there to get her out? Oh, we prepared a motion. Well, let me see that motion. Well, that was missing, too, and it turned out, of course, they never did. When they were notified that she had been in jail for three days, they still never did anything. And let me talk about the last point, which is what counsel raised, which is, and the point that the court raised, which is agency. Agency comes in two parts. One is responsibility, and Pam Russ testified we had absolute authority. We had unlimited authority to bring the writs, and she testified she drew the motions for it, a clerk, and she said she did not check with her creditor. She did not need to. Secondly, as to control, they chose the method of control and chose not to control. They chose to let their lawyer do whatever they were going to do without any review. Lastly, in terms of the file being produced, amazingly enough, we received letters, emails, but none for the relevant period that said we have issued the writ against Sterling. As you see in the court file, the record, there are long letters saying here's 50 writs we've issued. Just happened that those letters are missing. They never sent a notice to the creditor saying we've issued these writs, and this one includes Sterling. Those just happened to be missing from the file. The fact is Southlake made a choice, and that choice was to not read the mail, not keep any records, and not do anything. They should not be allowed to abdicate their responsibility because of what the lawyer did. Thank you for your opportunity to speak to you today. All right. Thanks so much. Thanks to all counsel. We'll take the case under advisement.